UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-CV-2535 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| BAR ARBOR GLEN AT PROVIDENCE HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of America, N.A.'s ("BANA") motion for summary judgment. (ECF No. 38). Defendant Williston Investment Group LLC ("Williston") (ECF No. 45) and defendant Bar Arbor Glen at Providence Homeowners Association (the "HOA") (ECF No. 41) filed responses, to which BANA replied (ECF Nos. 46, 48).

Also before the court is Williston's motion for summary judgment. (ECF No. 36). Plaintiff filed a response (ECF No. 40). Williston has not filed a reply, and the time for doing so has since passed.

Also before the court is the HOA's motion for summary judgment. (ECF No. 39). BANA filed a response (ECF No. 42), to which the HOA replied (ECF No. 47).

**I.  Facts**

This case involves a dispute over property that was subject to a homeowners' association superpriority lien for delinquent assessment fees. On August 21, 2008, Gaines Day Duvall, Jr. and Tiffany Ruth Duvall (the "borrowers") obtained a loan from Universal American Mortgage Company, LLC (the "originating lender") to purchase property located at 10420 Scotch Elm Avenue, Las Vegas, Nevada, 89166 (the "property"). (ECF No. 38-1). The note was secured by

**James C. Mahan**
**U.S. District Judge**

a deed of trust, recorded on August 27, 2008,[1] identifying Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary acting solely as nominee for lender and lender's successors and assigns. *Id.* On October 12, 2011, MERS assigned the deed of trust to BANA. (ECF No. 38-3).

On December 28, 2011, Nevada Association Services ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,102.96. (ECF No. 1). On February 13, 2012, NAS, on behalf of the HOA, recorded a notice of default and election to sell under homeowners' association lien. (ECF No. 1). The notice of default stated the amount due to the HOA was $2,221.71. *Id.*

On July 3, 2012, NAS recorded a notice of trustee's sale, which stated the amount due to the HOA was $3,451.66 and anticipated a sale date of July 27, 2012. (ECF No. 1). On December 28, 2012, Williston purchased the property at the foreclosure sale for $4,908. (ECF No. 1). A foreclosure deed in favor of Williston was recorded on January 7, 2013. (ECF No. 1).

On November 1, 2016, BANA filed the underlying complaint, alleging six causes of action: (1) quiet title/declaratory judgment against the all defendants; (2) breach of NRS 116.1113 against the HOA and NAS; (3) wrongful foreclosure against the HOA and NAS; and (4) injunctive relief against Williston. (ECF No. 1).

In an order dated April 28, 2017, the court dismissed BANA's claims for breach of NRS 116.1116 and wrongful foreclosure and time barred. (ECF No. 28). The court also dismissed plaintiff's claim for injunctive relief for failure to state a claim upon which relief can be granted. *Id.*

In the instant motions, BANA, the HOA, and Williston move for summary judgment as to the parties' competing claims for quiet title. (ECF Nos. 36, 38, 39).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1] The deed of trust was rerecorded on September 9, 2008 to add a corrected notary jurat. (ECF No. 1).

show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion**[2]

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for a party to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2013–14, when the events giving rise to this litigation occurred.

James C. Mahan
U.S. District Judge

Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[3] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[3] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

- 5 -

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Based on *Shadow Wood*, the recitals therein are conclusive evidence that the foreclosure lien statutes were complied with—*i.e.*, that the foreclosure sale was proper. *See id.*; *see also Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 (Nev. App. Apr. 17, 2017) ("And because the recitals were conclusive evidence, the district court did not err in finding that no genuine issues of material fact remained regarding whether the foreclosure sale was proper and granting summary judgment in favor of SFR."). Therefore, pursuant to *SFR Investments*, NRS 116.3116, and the recorded trustee's deed upon sale in favor of Williston, the foreclosure sale was proper and extinguished the first deed of trust.

Notwithstanding, the court retains the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See Shadow Wood Homeowners Assoc.*, 366 P.3d at 1112 ("When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief."). Accordingly, to withstand summary judgment in Williston and the HOA's favor, BANA must raise colorable equitable challenges to the foreclosure sale or set forth evidence demonstrating fraud, unfairness, or oppression.

In its motion for summary judgment, BANA sets forth the following relevant arguments: (1) the foreclosure sale is invalid because NRS Chapter 116 is facially unconstitutional pursuant

---

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*"); (2) the foreclosure sale was commercially unreasonable; (3) the HOA lien statute is preempted as applied to FHA-insured mortgages because it frustrates the FHA insurance program; and (4) Williston does not qualify as a bona fide purchaser. (ECF No. 38). The court will address each in turn.

While the court will analyze BANA's equitable challenges regarding its quiet title, the court notes that the failure to utilize legal remedies makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (Nev. 1982) (declining to allow equitable relief because an adequate remedy existed at law). Simply ignoring legal remedies does not open the door to equitable relief.

### 1. *Due process*

BANA argues that the HOA lien statute is facially unconstitutional because it does not mandate notice to deed of trust beneficiaries. (ECF No. 38). BANA further contends that any factual issues concerning actual notice are irrelevant pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"). (ECF No. 38 at 8).

BANA has failed to show that *Bourne Valley* is applicable to its case. Despite BANA's interpretation to the contrary, *Bourne Valley* did not hold that the entire foreclosure statute was facially unconstitutional. At issue in *Bourne Valley* was the constitutionality of the "opt-in" provision of NRS Chapter 116, not the statute in its entirety. Specifically, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. As identified in *Bourne Valley*, NRS 116.31163(2)'s "opt-in" provision unconstitutionally shifted the notice burden to holders of the property interest at risk—not NRS Chapter 116 in general. *See id.* at 1158.

Further, the holding in *Bourne Valley* provides little support for BANA as BANA's contentions are not predicated on an unconstitutional shift of the notice burden, which required it

to "opt in" to receive notice. BANA does not argue that it lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale).

Furthermore, BANA confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. "[T]he Due Process Clause protects only against deprivation of existing interests in life, liberty, or property." *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010); *see also, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity."). To establish a procedural due process claim, a claimant must show "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

BANA has satisfied the first element as a deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). However, BANA fails on the second prong.

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right. The HOA has provided proof of mailing for the notice of default and the notice of foreclosure sale to BANA and other interested parties. (ECF No. 39-4). As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put BANA on notice that its interest was subject to pendency of action and offered all of the required information.

. . .

. . .

## *2. Commercial Reasonability*

BANA contends that judgment in its favor is appropriate because the sale of the property for less than 4% of its alleged fair market value is grossly inadequate as a matter of law. (ECF No. 38). BANA also contends it can establish evidence of fraud, unfairness, or oppression. *Id.* However, BANA overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

BANA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally . . . a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value . . . ." (ECF No. 38 at 11).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a

---

[4] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

- 9 -

showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

The *Shadow Wood* court did not adopt the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, BANA fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. BANA asserts that there was massive legal uncertainty at the time of the foreclosure sale as to its effect on the first deed of trust.

- 10 -

(ECF No. 38). BANA then asserts that the HOA and NAS "compounded" the legal uncertainty. *See* (ECF No. 38 at 14) ("If [the HOA and NAS] were foreclosing on a super-priority lien, nothing prevented them from naming the super-priority amount and explaining how they calculated it. But they did not."). However, plaintiff does not point to any affirmative action taken by defendants that would constitute fraud, oppression, or unfairness. The inaction described by plaintiffs does not, in this context, rise to the level of fraud, unfairness, or oppression.

Accordingly, BANA's commercial reasonability argument fails as a matter of law as it failed to set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### 3. *FHA insurance program*

BANA argues that the HOA lien statute cannot interfere with the federal mortgage insurance program or extinguish mortgage interests insured by the FHA. (ECF No. 38).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

Multiple courts in this district, and the Supreme Court of Nevada, have held that the FHA insurance program does not conflict with the Nevada foreclosure statutes. *See Bank of America, N.A. v. Hollow de Oro Homeowners Association*, --- F. Supp. 3d ----, 2018 WL 523354, at *9 (D. Nev. Jan. 23, 2018); *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 200 F. Supp. 3d 1141, 1166 (D. Nev. 2016) ("The Court concludes that conflict preemption does not apply in this case.

Lenders are perfectly capable of complying with both HUD's program and NRS 116.3116 . . . ."); *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1184 (D. Nev. 2015) ("Nothing prevents a lender from simultaneously complying with HUD's program and Nevada's HOA-foreclosure laws."); *Renfroe v. Lakeview Loan Servicing, LLC*, 398 P.3d 904, 909 (Nev. 2017) ("Because the HUD guidelines for the FHA insurance program clearly contemplate and anticipate statutory schemes such as NRS 116.3116, the doctrine of conflict preemption does not apply in this case.").

The court holds that the Nevada foreclosure statutes do not directly conflict with the FHA insurance program for preemption purposes. *See Hollow de Oro*, 2018 WL 523354, at *9. Thus, BANA's preemption argument does not justify setting aside the underlying foreclosure sale.

### 4. *Bona fide purchaser status*

Because the court concludes that BANA failed to properly raise any equitable challenges to the foreclosure sale, the court need not address the parties' arguments regarding whether Williston was a bona fide purchaser for value. *See Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.3.

### IV. Conclusion

In light of the aforementioned, the court finds that BANA has failed to raise a genuine dispute so as to preclude summary judgment in favor of the HOA and Williston on both BANA's quiet title claim and Williston's quiet title claim. Nor has BANA established that it is entitled to summary judgment in its favor. BANA did not tender the amount provided in the notice of default or notice of foreclosure sale, as statute and the notices themselves instructed, and did not meet its burden to show that no genuine issues of material fact existed regarding the proper amount of the HOA's lien or constitutionally sufficient notice.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for summary judgment (ECF No. 38) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Williston's motion for summary judgment (ECF No. 36) be, and the same hereby is, GRANTED.

**James C. Mahan**
**U.S. District Judge**

- 12 -

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 39) be, and the same hereby is, GRANTED.

IT IS FURTHR ORDERED that Williston shall prepare a proposed judgment consistent with this order and submit it to the court within thirty (30) days for signature.

DATED May 7, 2018.

*[signature: James C. Mahan]*
UNITED STATES DISTRICT JUDGE